UNITED STATES DISCTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \*
                              \*
UNITED STATES                 \*        Criminal No. 11CR10002-NG
                              \*
    v.                        \*
                              \*
CHRIS JAMISON,                \*
    A/K/A 'LIL CHRIS          \*
                              \*
\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION FOR FRANKS HEARING

### STATEMENT OF RELEVANT FACTS

On January 29, 2009, Detective Lateisha Adams of the Homicide Unit of the Boston Police Department submitted an affidavit in support of an application for a search warrant for an apartment located at 44 Regent Street, No. 7, Roxbury, Massachusetts. (*See* Exhibit A, Affidavit and Application in Support of Search Warrant).

Adams represented that the murder of Anthony Perry had occurred on the afternoon of January 27, 2009 in the Jamaica Plain section of the city of Boston. (Exhibit A, Affidavit, p. 2). While witnesses had described a white Pontiac as having been involved in the crime, no witness had been able to positively identify a suspect.

The defendant and three other black males were stopped when spotted in a white Pontiac by B2 Officers one-half hour after the shooting of Anthony Perry. (Exhibit A, Affidavit, p. 2). These four individuals were "transported to the Homicide Unit at Boston Police Headquarters for further investigation." (Exhibit A, Affidavit, p. 2). The vehicle was towed, and, during a show up identification procedure, was identified as the vehicle

seen at the scene of the shooting by one witness.  A second witness was only "50%" sure of the identification of the automobile.  (Exhibit A, Affidavit, p. 2).

After the four individuals taken into custody from the Pontiac, were transported to headquarters, separated, and questioned by homicide investigators for over four hours, one of the four, hereinafter "CW,"[1] provided information that was used in support of the application for the search warrant at issue.  Specifically, the affidavit submitted in support of the warrant states that CW told investigators that the defendant Jamison had driven the car to the location of the shooting, had exited the car and returned after several gunshots were heard and stated "I think I got him."  (Exhibit A,  Affidavit, p. 2).  According to the affidavit, CW went on to state that the defendant had then driven to 44 Regent Street, went into the building and returned without the firearm.  (Exhibit A, Affidavit, p. 2).  Again according to the affidavit, the defendant then drove to a parking lot in the rear of 63 Homestead Street where they were stopped by police.  (Exhibit A, Affidavit, p. 2).

The affidavit also represents that a search of a computer data base revealed that the defendant had previous arrest  reports which indicated that he resided at 44 Regent Street, Apartment 7.  (*See* Exhibit A, Affidavit, p. 3).

## THE AFFIDAVIT OMITTED MATERIAL FACTS WHICH WOULD HAVE DEPLETED ANY FINDING OF PROBABLE CAUSE

Omitted from the affidavit submitted in support of the application for search warrant were the following facts:

---

[1] The Commonwealth has sought, and been granted, a protective order relative to this individual's name and contribution to the investigation.  Therefore, he will be referred to within this memorandum and other subsequent filings as "CW."

1. CW had been "interviewed" for over 5 hours. During the first 4 hours, he steadfastly held to a version of events that no one in the car with him had possession of a gun. He further stated that he had been sitting in the front passenger seat. (*See* Exhibit B, CW Interview I p.6; II p. 128).

2. Only after holding out for a guarantee of what would happen to him, and being assured that the District Attorney's office had assured him that he "would not be charged with anything **as long as he was not the shooter**", CW then told police that the defendant had committed the shooting. (*See* Exhibit B, CW Interview I, p.88-89)

3. CW then proceeded to tell police that the defendant drove the car to an apartment near Humboldt and Sever street -not the Regent street location for which the application for a warrant was being made. CW went on to elaborate that the defendant he went up to **that** building and got rid of the gun. (CW Interview I, p.102-105)

4. CW later told police that the defendant gave the gun to "Benzi"—another individual in the car—and told him to "get rid of it" at the apartment building on Humboldt Street. (*See* Exhibit B, CW Interview I, p. 109-110)

5. It was not until after police interviewed CW for the fourth time that he told them that the defendant disposed of the gun at 44 Regent Street. (*See* Exhibit B, CW Interview II, p.7 ). He then admitted that his earlier statement that Benzi had been given the gun on Humboldt Street was not true.

6. CW told police that Benzi had not done anything, but that he had known Shaba (the car's other occupant) for a longer time, and therefore had decided to say that Benzi had taken the gun. (*See* Exhibit B, CW  Interview II, p.10-11).

7. CW indicated that the video surveillance at the Regent Street apartment would **not** indicate that he was present when the defendant entered the apartment building. (*See* Exhibit B, CW Interview I, p.116). In fact, video surveillance obtained prior to the submission of the search warrant affidavit indicated that CW did, in fact, enter the apartment with the defendant.

8. Although the police reports indicated that the defendant lived at the Regent Street address, the defendant had been living in Connecticut and had not resided at Regent Street for some months. This fact was well known to the police. (*See* Exhibit C, Jamison Interview, at p.36-40, wherein the detectives ask the defendant what he is doing in town)

In short, the affidavit omitted facts which would have revealed to the issuing judge: 1) that the principal source of information to support probable cause to believe that the gun was located at the place to be searched had repeatedly lied about the gun's whereabouts while providing two other locations where officers could find the gun; and 2) that the defendant did not in fact live at the location sought to be searched.

## ARGUMENT

**A HEARING IS REQUIRED TO DETERMINE WHETHER THE OMISSION AND MISREPRESENTATION IN THE AFFIDAVIT WERE DONE INTENTIONALLY OR WITH RECKLESS DISREGARD FOR THE TRUTH**

In *Franks v. Delaware*, 438 U.S. 154, 154 (1978), the United States Supreme Court held that:

> Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth

> Amendment, requires that a hearing be held at the defendant's request.

The First Circuit has instructed that a material omission may trigger a *Franks* hearing where the omissions would lead to a negative finding by the magistrate of probable cause. *United States v. Castillo*, 287 F.3rd 21 (1st Cir.2002) citing *United States v. Hadfield*, 918 F..2nd 987,992 (1st Cir.1990)

The defendant respectfully submits that a *Franks*-type hearing is required here, where the factual omissions completely detract from the inference that the contraband was expected to be found at the place to be searched and demonstrate that the defendant no longer lived at that location. Had these omissions been included in the affidavit, there would not have been probable cause to issue the warrant for the location of 44 Regent Street, Roxbury.

## **CONCLUSION**

For all of the foregoing reasons, the defendant respectfully submits that a hearing is required under *Franks v. Delaware* and its progeny.

Respectfully submitted,

/s/

FRANCES L. ROBINSON
Davis Robinson & Molloy, LLP
One Faneuil Hall Market,
    Third Floor
South Market Building
Boston, Massachusetts 02109
(617)723-7339
BBO #422910

CERTIFICATE OF FILING

    I, Frances L. Robinson hereby certify that a true copy of the foregoing Motion for Hearing and Memorandum in Support of Motion for Franks Hearing was filed and a copy served upon counsel of record this 4th[t] day of April, 2011.


_/s/_____
Frances L. Robinson