```
                    UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF MASSACHUSETTS



 UNITED STATES,                    )
                                   )
                 PLAINTIFF         )   Criminal Action
                                   )
         -VS-                      )   No. 11-10002-NG
                                   )
 CHRISTOPHER JAMISON,              )   June 29, 2011
                                   )
                                   )   9:55 a.m.
                 DEFENDANT         )


                           REDACTED

                         RULE 11 HEARING



                BEFORE THE HONORABLE NANCY GERTNER

                  UNITED STATES DISTRICT COURT

                JOHN J. MOAKLEY U.S. COURTHOUSE

                       1 COURTHOUSE WAY

                       BOSTON, MA  02210







                       VALERIE A. O'HARA
                     OFFICIAL COURT REPORTER
                   UNITED STATES DISTRICT COURT
                1 COURTHOUSE WAY, COURTROOM 3204
                       BOSTON, MA  02210
                  E-mail:  vaohara@gmail.com
```

```
 1   A P P E A R A N C E S:

 2   FOR THE UNITED STATES:

 3       United States Attorney's Office, by JOHN A. WORTMANN,
     JR., ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way,
 4   Suite 9200, Boston, Massachusetts  02110;

 5   FOR THE DEFENDANT:

 6       Davis, Robinson & White, LLP, by FRANCES L. ROBINSON,
     ATTORNEY, One Faneuil Hall Marketplace, 3rd Floor,
 7   South Market Building, Boston, Massachusetts 02109-1649.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           P R O C E E D I N G S
2        THE CLERK: All rise.
3        THE COURT: You can be seated.
4        THE CLERK: This is criminal matter 11-10002,
5   United States vs. Chris Jamison. Would counsel please
6   identify themselves for the record.
7        MR. WORTMANN: Your Honor, good morning, John
8   Wortmann for the United States.
9        THE COURT: Good morning.
10       MS. ROBINSON: Your Honor, good morning, Attorney
11  Fran Robinson for Chris Jamison.
12       THE COURT: Mr. Jamison, would you please stand.
13       (Defendant was sworn)
14       THE CLERK: Mr. Jamison, as to Count 1 of the
15  superseding information, you are charged with possession of
16  cocaine with intent to distribute in violation of violation
17  21 of the United States Code, Section 841(a)(1). How do you
18  wish to plead to Count 1, guilty or not guilty?
19       THE DEFENDANT: Guilty.
20       THE COURT: Mr. Jamison, would you come up here,
21  please. Mr. Jamison, can you tell me how old you are?
22       THE DEFENDANT: Twenty-six.
23       THE COURT: How far did you go in school?
24       THE DEFENDANT: I got my G.E.D.
25       THE COURT: G.E.D., where did you get it?

1         THE DEFENDANT:  South Bay.
2         THE COURT:  Okay.  Were you born in this country?
3         THE DEFENDANT:  Yes, ma'am.
4         THE COURT:  Okay.  When was the last time you had
5    an alcoholic beverage to drink?
6         THE DEFENDANT:  Almost three years ago.
7         THE COURT:  You're not under the influence now?
8         THE DEFENDANT:  No.
9         THE COURT:  Otherwise you would have had an
10   unbelievable capacity, right, you understand?
11        THE DEFENDANT:  Yes.
12        THE COURT:  Are you under the influence of drugs,
13   prescribed drugs, legal or illegal?
14        THE DEFENDANT:  No, ma'am.
15        THE COURT:  I ask you these questions because I
16   want to make sure you know what you're doing.
17        THE DEFENDANT:  Uh-hum.
18        THE COURT:  Have you read the charges against you?
19        THE DEFENDANT:  Yes, ma'am.
20        THE COURT:  You understand them?
21        THE DEFENDANT:  Yes.
22        THE COURT:  Have you talked to your lawyer about
23   the charges?
24        THE DEFENDANT:  Yes.
25        THE COURT:  Are you satisfied with your lawyer's

```
 1  representation of you?
 2          THE DEFENDANT:  Yes, ma'am.
 3          THE COURT:  That's a very strong yes, ma'am, you
 4  made that clear.  What are the maximum penalties here,
 5  Mr. Wortmann?
 6          MR. WORTMANN:  On the superseding information,
 7  Mr. Jamison faces a maximum term of 20 years, a fine of up
 8  to $1 million, an additional period of supervised release of
 9  at least three years up to life and a $100 mandatory special
10  assessment.
11          THE COURT:  You understand, sir, that those are
12  the maximum penalties?
13          THE DEFENDANT:  Yes, ma'am.
14          THE COURT:  What you will get in this case will be
15  in part determined by the maximum penalties, in part by the
16  Sentencing Guidelines, in part by the discretion of the
17  sentencing Judge.  Do you understand that?
18          THE DEFENDANT:  Yes, ma'am.
19          THE COURT:  I understand it's a (C) plea.  You
20  understand -- and those things follow even though it's a (C)
21  plea.  The agreement that you have between your lawyer on
22  the one hand and the government on the other essentially is
23  an agreement to a particular sentence, and the sentence is
24  120 months, 10 years?
25          THE DEFENDANT:  Yes, ma'am.
```

1     THE COURT: If the Judge who sentences you doesn't
2  agree that that's the appropriate sentence, then you'd have
3  an opportunity to withdraw your plea. Do you understand
4  that?
5     THE DEFENDANT: Yes, ma'am.
6     THE COURT: You understand that by pleading
7  guilty, you give up your rights to a trial. Those rights
8  are the right -- the obligation of the government to put on
9  its case before a jury, the jury has to be unanimous, 12
10 people have to all decide that the government has met its
11 proof beyond a reasonable doubt.
12     You have no obligation to put on any evidence, you
13 have no obligation to testify against yourself, but if you
14 choose, you could testify, put on evidence, cross-examine
15 witnesses, subpoena witnesses. You give up all those rights
16 when you plead guilty. Do you understand that?
17     THE DEFENDANT: Yes, ma'am.
18     THE COURT: In addition, you've given up your
19 right to an indictment, which is essentially a way of
20 screening the charges so that a grand jury decides if
21 there's probable cause to proceed in your case. You have
22 waived indictment here and agreed to go by information,
23 which is where the government simply charges you without
24 going to a grand jury. Do you understand that?
25     THE DEFENDANT: Yes, ma'am.

1	THE COURT: Okay. The plea agreement that you've
2	signed, we call it a binding plea agreement. It's binding,
3	as I said, only in the sense that if the Judge doesn't
4	accept the plea, you have a chance to set aside your plea.
5	Do you understand that?
6	THE DEFENDANT: Yes, ma'am.
7	THE COURT: Has anyone promised you anything else
8	to get you to plead guilty?
9	THE DEFENDANT: No.
10	THE COURT: Has anyone threatened you in any way?
11	THE DEFENDANT: No.
12	THE COURT: What are the facts here,
13	Mr. Wortmann.
14	MR. WORTMANN: Your Honor, if the matter proceeded
15	to trial, the government would prove all the elements of
16	Count 1 of the superseding information beyond a reasonable
17	doubt. The government's evidence would show that on
18	January 29th of 2009, members of the Boston Homicide Unit
19	obtained a Superior Court search warrant authorizing the
20	search of xx xxxxxx xxxxxx, Apartment x in Roxbury.
21	The search warrant was issued in connection with
22	an ongoing investigation into the Anthony Perry homicide.
23	The search warrant was executed approximately 3:50 that
24	afternoon, and in the rear bedroom of the apartment in a
25	dresser that contained numerous envelopes, letters, cards

1   with the defendant's name, photographs of the defendant,
2   officers also found a plastic bag containing 18 smaller
3   plastic bags of what was immediately identified as crack
4   cocaine.
5         The drugs were seized, they were taken to the
6   state laboratory, and the state laboratory thereafter
7   certified the contents of those 18 bags to be approximately
8   1.7 grams of crack cocaine.  No cocaine base test was done.
9   The government's evidence would also show that between 2006
10  and late 2008, Mr. Jamison was on probation through the
11  Massachusetts court system but was being supervised at
12  various times either in Bridgeport, Connecticut or in
13  Boston, and during the course of that supervision, he told
14  supervising probation officers including Bridgeport,
15  Connecticut Probation Officer Brian Cusick that he smoked
16  marijuana, had used alcohol but had no other substance
17  abuse.
18        He was periodically drug tested between 2006 and
19  2008, and while there were repeated positives for marijuana,
20  he never tested positive for cocaine, and the last such drug
21  tests were done in March and April of 2008, approximately
22  six months prior to the seizure of the drugs at xx xxxxxx
23  xxxxxx.
24        If the case went to trial, the government would
25  also have a qualified expert who would testify that the

1  drugs that belonged to the defendant were for distribution
2  rather than for personal use.  The expert would rely on the
3  amount of drugs, the manner in which they were packaged, the
4  absence of any smoking implements contained in the
5  apartment, the statements that Mr. Jamison had periodically
6  made to his probation officer as well as his appearance
7  before the probation officers as well as the drug tests
8  between 2006, 2008 would show that he had never tested
9  positive for cocaine.  That would be the evidence in support
10 of Count 1 of the superseding information, your Honor.
11         THE COURT:  That information would go to that this
12 couldn't have been for his personal use or else he would
13 have tested positive, and it had to be for distribution?
14         MR. WORTMANN:  Exactly, your Honor.
15         THE COURT:  Are the facts as Mr. Wortmann
16 described?
17         THE DEFENDANT:  Yes, ma'am.
18         THE COURT:  So you're pleading guilty because you
19 are guilty and for no other reason?
20         THE DEFENDANT:  Yes, ma'am.
21         THE COURT:  You understand that I won't be the
22 Judge, I will not be the Judge to sentence you, do you
23 understand that?
24         THE DEFENDANT:  Yes, ma'am.
25         THE COURT:  Another Judge will get the case.

1  Okay.  I'm going to accept your plea.  I find it knowing and
2  voluntary.  You can go back to your seat.  Should we give
3  him a date and whoever gets the case would decide whether
4  they can do it?
5           THE CLERK:  Yes.
6           THE COURT:  Can we do Thursday, September 29th?
7  Can you?
8           MR. WORTMANN:  Sure.
9           THE COURT:  That may be subject to change because
10 the case will be redrawn to another Judge.  Okay.  This
11 seems like the right outcome.  Thank you.
12          MR. WORTMANN:  At two o'clock, your Honor?
13          THE COURT:  Two o'clock.
14          MR. WORTMANN:  Your Honor, I should also point
15 out, and I know you saw them, and Ms. Robinson I had
16 extensive discussions about them, but if the plea agreement
17 is accepted, there are certain appeal waivers and certain
18 reservation of rights with respect to any claims for
19 ineffective assistance of counsel, I just want to that put
20 on the record as well.
21          THE COURT:  I saw that, and my opposition to that
22 continues but has crumbled in the face of particularly a
23 (C) plea more than anything else.
24          MR. WORTMANN:  I tried to indicate all of the
25 consideration that had been provided for that, your Honor.

1        THE COURT: In light of a (C) plea, it seems to me
2   that this is -- I stand by my position in anything other
3   than a (C) plea, let me put it that way, but you have
4   "notwithstanding the previous paragraphs, the defendant
5   reserves the right to claim that his counsel was
6   ineffective."  Thank you.
7        MR. WORTMANN: Thank you, your Honor.
8        THE CLERK: All rise.
9        (Whereupon, the hearing was suspended at
10  10:26 a.m.)

1            C E R T I F I C A T E

2

3  UNITED STATES DISTRICT COURT )

4  DISTRICT OF MASSACHUSETTS    )

5  CITY OF BOSTON               )

6            I, Valerie A. O'Hara, Registered Professional

7  Reporter, do hereby certify that the foregoing transcript

8  was recorded by me stenographically at the time and place

9  aforesaid in No. 11-10002-NG, United States vs.

10 Christopher Jamison and thereafter by me reduced to

11 typewriting and is a true and accurate record of the

12 proceedings.

13                      /S/ VALERIE A. O'HARA

14

15                      _____

16                      VALERIE A. O'HARA

17                      REGISTERED PROFESSIONAL REPORTER

18                      DATED July 7, 2011

19                      _____